UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARVEY PRESTON,

          Petitioner,                              Hon. Gordon J. Quist

v.                                               Case No. 2:14-CV-10606

LORI GIDLEY,

          Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Preston's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Preston's petition be **denied**.

**BACKGROUND**

        As a result of events occurring on November 6, 2008, Petitioner was charged with: (1) carjacking; (2) first-degree home invasion; (3) unarmed robbery; and (4) two counts of second-degree criminal sexual conduct.  (Trial Transcript, April 22, 2010 at PageID.239-41).  Several individuals testified at Petitioner's jury trial.  The relevant portions of their testimony are summarized below.

1

**Deborah Spehar**

As of November 6, 2008, Spehar lived alone at 2495 Warwick, Troy, Michigan. (Trial Transcript, April 23, 2010 at PageID.350-51). Early that morning as Spehar was preparing for work, she heard "two loud bangs" coming from the front of the house. (Trial Transcript, April 23, 2010 at PageID.351). When Spehar neared the front door, she observed Petitioner standing "in the middle of the foyer." (Trial Transcript, April 23, 2010 at PageID.353, 358-59). Petitioner immediately "grabbed" Spehar and the pair began to struggle. (Trial Transcript, April 23, 2010 at PageID.353-59). Spehar eventually escaped Petitioner's grasp at which point Petitioner "asked for money and jewelry." (Trial Transcript, April 23, 2010 at PageID.353-59). Spehar responded by giving Petitioner forty dollars from her wallet which was sitting nearby. (Trial Transcript, April 23, 2010 at PageID.357-59).

Petitioner then led Spehar to her bedroom where her jewelry was located. (Trial Transcript, April 23, 2010 at PageID.359-64). Petitioner took the jewelry and then led Spehar into an adjacent bedroom. (Trial Transcript, April 23, 2010 at PageID.364-66). Petitioner "pushed [Spehar] into the room and across the bed" and then, still fully clothed, climbed on top of Spehar. (Trial Transcript, April 23, 2010 at PageID.364-66). Petitioner then began "push[ing] his groin against [Spehar's] buttocks" while simultaneously choking Spehar. (Trial Transcript, April 23, 2010 at PageID.365-68). Petitioner eventually "eased up" at which point Spehar told Petitioner that she would "write him a check because [she] didn't have anything else." (Trial Transcript, April 23, 2010 at PageID.368-70). Petitioner responded by stating, "let's go get it." (Trial Transcript, April 23, 2010 at PageID.370).

Petitioner led Spehar to an adjacent room where she retrieved her checkbook. (Trial

2

Transcript, April 23, 2010 at PageID.370).  Petitioner then led Spehar to the foyer and instructed Spehar to get in a closet.  (Trial Transcript, April 23, 2010 at PageID.371).  Spehar then wrote a check in the amount of one thousand dollars and slid it under the door to Petitioner.  (Trial Transcript, April 23, 2010 at PageID.371-73).  Petitioner then grabbed Spehar and instructed her to go to the basement.  (Trial Transcript, April 23, 2010 at PageID.373-75).  As Petitioner led Spehar to the basement he began grabbing her genitals.  (Trial Transcript, April 23, 2010 at PageID.377).  Once in the basement, Petitioner located a vacuum cleaner and stated he wanted to use the cord to tie Spehar's hands.  (Trial Transcript, April 23, 2010 at PageID.377-79).  Spehar resisted at which point Petitioner struck her in the face with his fist.  (Trial Transcript, April 23, 2010 at PageID.378-81).

Spehar attempted to distract Petitioner by stating that she had more jewelry upstairs. (Trial Transcript, April 23, 2010 at PageID.380-81).  Petitioner then grabbed Spehar and led her back upstairs.  (Trial Transcript, April 23, 2010 at PageID.381-82).  Once upstairs, Petitioner asked Spehar if she owned a car.  (Trial Transcript, April 23, 2010 at PageID.381-82).  Spehar indicated she did and gave Petitioner the keys to her vehicle.  (Trial Transcript, April 23, 2010 at PageID.382-88).  Petitioner then instructed Spehar to return to the basement after which Petitioner departed with Spehar's vehicle.  (Trial Transcript, April 23, 2010 at PageID.388-91).  After waiting 5-10 minutes, Spehar exited her residence and walked to a neighbor's house to contact the police.  (Trial Transcript, April 23, 2010 at PageID.391-93).

The following day, Spehar met with Detective Larry Schehr.  (Trial Transcript, April 23, 2010 at PageID.393-94).  Detective Schehr showed Spehar several photographs, but she was unable to identify her assailant.  (Trial Transcript, April 23, 2010 at PageID.394-95).  Approximately

3

two months later, authorities contacted Spehar to inform her that her vehicle had been recovered. (Trial Transcript, April 23, 2010 at PageID.395-96). At this time, Detective Schehr presented Spehar with additional photographs in response to which Spehar identified Petitioner as her attacker. (Trial Transcript, April 23, 2010 at PageID.396). Based on the photograph she was shown, Spehar was "80 percent confident" that Petitioner was her assailant, but after hearing Petitioner speak at a subsequent court proceeding she was 100 percent confident that Petitioner was her attacker. (Trial Transcript, April 23, 2010 at PageID.396-99).

**Christopher Cox**

As of January 5, 2009, Cox was employed as a police officer for Northville Township. (Trial Transcript, April 23, 2010 at PageID.471). On that date, Cox was dispatched to investigate a home invasion that had just occurred. (Trial Transcript, April 23, 2010 at PageID.471-73). Cox was instructed to be on the look out for a "black male in a light-colored bubbled winter jacket." (Trial Transcript, April 23, 2010 at PageID.473). Cox was subsequently informed that a person matching that description was driving a red SUV at a high rate of speed. (Trial Transcript, April 23, 2010 at PageID.473-74). Shortly thereafter, Cox observed a red SUV cross multiple lanes of traffic to enter a townhouse complex. (Trial Transcript, April 23, 2010 at PageID.474). Because this conduct "seemed unusual," Cox "went to check on it." (Trial Transcript, April 23, 2010 at PageID.474).

Cox observed Petitioner exit the SUV wearing a "light-colored bubbled jacket." (Trial Transcript, April 23, 2010 at PageID.475-76). Cox then exited his vehicle and instructed Petitioner to "stop." (Trial Transcript, April 23, 2010 at PageID.476). Petitioner immediately fled

4

on foot and Cox gave chase. (Trial Transcript, April 23, 2010 at PageID.476). Petitioner eventually returned to the SUV and began to drive away. (Trial Transcript, April 23, 2010 at PageID.476-77). Concerned that Petitioner was "desperate to flee and escape" and knowing that "there's been a lot of bad injuries or deaths resulting from pursuits in rush hour traffic," Cox shot one of the SUV's tires. (Trial Transcript, April 23, 2010 at PageID.476-77). Petitioner nevertheless continued to drive away at a high rate of speed. (Trial Transcript, April 23, 2010 at PageID.477). After traveling a short distance, Petitioner crashed into a parked vehicle and fled on foot. (Trial Transcript, April 23, 2010 at PageID.477-79). Petitioner was apprehended a short time later. (Trial Transcript, April 23, 2010 at PageID.477-81). A subsequent examination of the SUV's ignition and steering wheel revealed no evidence of damage, suggesting that Petitioner used a key to operate the vehicle. (Trial Transcript, April 23, 2010 at PageID.489-90).

**Larry Schehr**

As of November 6, 2008, Schehr was employed as a Detective with the Troy Police Department. (Trial Transcript, April 23, 2010 at PageID.496). On that date, Schehr was dispatched to investigate the attack on Deborah Spehar earlier that day. (Trial Transcript, April 23, 2010 at PageID.496). A police sketch artist accompanied Schehr and created a composite sketch based upon Spehar's description of her assailant. (Trial Transcript, April 23, 2010 at PageID.522-28). A second composite sketch was later completed by a separate police sketch artist. (Trial Transcript, April 23, 2010 at PageID.532-33).

Based on Spehar's description of her assailant, Schehr constructed several photo line-ups, but Spehar was unable to identify her attacker. (Trial Transcript, April 23, 2010 at PageID.497-

5

504).   Schehr subsequently learned that Petitioner had been captured and Spehar's vehicle recovered.  (Trial Transcript, April 23, 2010 at PageID.506-08).  Detective Schehr later constructed additional photo line-ups, consisting of photographs of fifty-four (54) individuals, for Spehar to review.  (Trial Transcript, April 23, 2010 at PageID.508-15).  After examining these photos, Spehar identified Petitioner as her attacker.  (Trial Transcript, April 23, 2010 at PageID.515-18).

**Bernard Sanders**

As of January 9, 2009, Sanders was employed with the Wayne County Sheriff's Department.  (Trial Transcript, April 23, 2010 at PageID.551).  As of this date, Petitioner was housed at the Wayne County Jail. (Trial Transcript, April 23, 2010 at PageID.551-52).  On this date, a physical lineup was scheduled to occur at the jail, but Petitioner refused to participate.  (Trial Transcript, April 23, 2010 at PageID.551-52).

**Elton Martin**

As of January 9, 2009, Martin was employed with the Wayne County Sheriff's Department.  (Trial Transcript, April 23, 2010 at PageID.554).  As of this date, Petitioner was housed at the Wayne County Jail. (Trial Transcript, April 23, 2010 at PageID.554-55).  On this date, a physical lineup was scheduled to occur at the jail, but Petitioner refused to participate.  (Trial Transcript, April 23, 2010 at PageID.554-56).

**Irving Phillipson**

As of January 15, 2009, Phillipson was employed with the Wayne County Sheriff's

Department.  (Trial Transcript, April 23, 2010 at PageID.560-62).  As of this date, Petitioner was housed at the Wayne County Jail.  (Trial Transcript, April 23, 2010 at PageID.562-63).  On this date, a physical lineup was scheduled to occur at the jail, but Petitioner refused to participate.  (Trial Transcript, April 23, 2010 at PageID.563-64).

Following the presentation of evidence, the jury found Petitioner guilty of: (1) carjacking; (2) first degree home invasion; (3) unarmed robbery; and (4) two counts of second degree criminal sexual conduct.  (Trial Transcript, April 26, 2010 at PageID.641-42).  Petitioner was sentenced to serve 30-60 years in prison on the carjacking conviction and lesser terms of imprisonment on the other convictions.  (Sentencing Transcript, May 13, 2010 at PageID.661).  Petitioner subsequently appealed his conviction in the Michigan Court of Appeals asserting the following claims:

I.      Both Michigan law and the Michigan and United States constitution require sufficient evidence to convict a defendant.  There was insufficient evidence in this case that defendant committed the offense of carjacking, home invasion first degree, robbery unarmed or criminal sexual conduct.

II.     The in-court identification was tainted by the illegal pretrial identification process and eavesdropping of the complaining witness.

III.    The trial court erred in denying defendant's motion to quash the information.

IV.     The defendant was denied his constitutional and statutory right to a speedy trial, resulting in prejudicial error.

V.      The trial court prejudicially erred in failing to order a change of venue on grounds of inflammatory pretrial publicity.

7

VI.     Defendant, an African-American, was denied due process and equal protection because he was not tried by a jury of his peers.

VII.    The trial court abused its discretion and violated defendant's due process rights by scoring OV 4 ten points, OV 7 fifty points, and OV 8 fifteen points, and sentencing defendant on inaccurate information.

VIII.   Prosecutorial misconduct in eliciting testimony that defendant refused to participate in a line-up violated defendant's constitutional rights against self-incrimination, to due process of law, and a fair trial.

IX.     Defendant was rendered ineffective assistance of counsel because his trial attorney made many serious mistakes.

X.      Prosecutor violated the defendant's constitutional rights and the integrity of the judicial process.

XI.     Trial judge abused his discretion in trial proceedings.

(PageID.691-92, 803).[1]

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Preston*, 2012 WL 5853223 (Mich. Ct. App., Oct. 30, 2012). Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal asserting the issues identified above as well as two new issues:

I.      Prosecution imposition multiple punishments on defendant's for same offense.

II.     The defendant's were never giving Miranda warnings.

(PageID.838-39).

The court denied leave to appeal on the ground that "we are not persuaded that the

---

[1] Issues I-VIII were asserted by Petitioner's counsel, whereas issues IX-XI were asserted by Petitioner in a supplement brief.

questions presented should be reviewed by this Court." *People v. Preston*, Case No. 146414, Order

(Mich., April 29, 2013). On February 7, 2014, Petitioner initiated the present action. On March 24,

2014, Preston submitted an amended petition in which he asserts the following claims:

I.    Is case 09-225701-FC a federal case defendant's stands on Amendments 5, 6, 8, and 14.

II.   Has case number 298796 ever been heard before assign to defendants stands on Amendments 5, 6, 8 and 14.

III.  Prosecution imposition multiple punishments on defendants' for same offense.

IV.   The defendants' were never giving Miranda warnings.

V.    Case number 09-2133-01 is insufficiency for evidence for case number 09-225701-FC.

VI.   The defendants had no knowledge of being charge as a habitual offender until sentencing at trial which violates the Fifth, Sixth, Eighth and Fourteenth Amendment.

VII.  Jury composition there was a underinclusion of a identifiable group as a result of the jury selection system.

VIII. Investigation and policing.

IX.   Defendant was rendered ineffective assistance of counsel.

X.    The trial court prejudicially erred in failing to order a change of venue on grounds of inflammatory pretrial publicity.

XI.   Prosecution violated the defendants constitutional rights and the integrity of the judicial process.

XII.  Trial judge abused his discretion in trial proceedings

9

which violates defendants Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

XIII.   Defendants constitutional rights were violated when defendants final pretrial conference was held without defendants being present violates Fifth, Sixth, Eighth and Fourteenth Amendments.

(ECF No. 9 at PageID.32-52).


## STANDARD OF REVIEW

Preston's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law

when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that

11

adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must

apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I.        Exhaustion

A petition for writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The petitioner properly exhausts his claims by "fairly presenting his federal claims to the state courts." *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citation omitted). The exhaustion requirement "is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Id.*

While exhaustion requires that the petitioner present his claims to the state's highest court, presenting his claims to *only* the state's highest court may not suffice. The Michigan Supreme Court conducts discretionary review of appeals by application for leave to appeal. In *Castille v. Peoples*, 489 U.S. 346 (1989), the United States Supreme Court held that presentation of an issue

for the first time on discretionary review to the state's highest court does not satisfy the "fair presentation" requirement where the court declines to exercise its discretion to review the matter. *Id.* at 351. Applying *Castille*, the Sixth Circuit has likewise determined that the exhaustion requirement is not satisfied where a petitioner first presents a claim on discretionary appeal to the state's highest court, unless that court opts to review the merits of the claim. *See*, *e.g.*, *Clinkscale v. Carter*, 375 F.3d 430, 440 (6th Cir. 2004); *Granger v. Hurt*, 215 Fed. Appx. 485, 491 (6th Cir., Feb. 8, 2007).

Of the thirteen issues asserted in Preston's habeas petition, several have not been properly exhausted. Habeas issues I, II, and XIII were not presented in state court. Habeas issues III and IV were presently only to the Michigan Supreme Court which denied Petitioner leave to appeal. Furthermore, while Petitioner did assert in state court claims of ineffective assistance of counsel, many of the claims of ineffective assistance of counsel asserted in habeas issue IX, were not presented to the state courts.

In state court, Petitioner asserted that his trial attorney's performance was deficient in three respects: (1) counsel failed to conduct a sufficient investigation prior to trial, (2) counsel improperly stipulated to the admission of a composite sketch of Petitioner, and (3) counsel improperly stated during closing argument that he was "for the Plaintiff." (PageID.808). In his habeas petition, however, Preston asserts several new claims of ineffective assistance that were not presented to the state court. Of the three ineffective assistance claims presented to the state court, only the claim that counsel improperly stipulated to the admission of a composite sketch of Petitioner has been asserted in the present action. Thus, the other claims of ineffective assistance of counsel asserted by Petitioner in the present action have not been properly exhausted. In sum,

14

only the following claims asserted in Preston's habeas petition have been properly exhausted: (1) habeas claims V, VI, VII, VIII, X, XI, XII, and (2) Petitioner's claim, asserted in habeas claim IX, that his attorney rendered ineffective assistance by stipulating to the admission of a composite sketch of Petitioner.

Generally, the Court would dismiss without prejudice a mixed petition such as this so as to permit Petitioner to return to state court to properly exhaust his claims. However, the Antiterrorism and Effective Death Penalty Act (AEDPA) now imposes a one-year statute of limitations, which is not tolled during the pendency of a federal habeas petition. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). The statute of limitations has long since expired, therefore, and such a dismissal would effectively preclude review of Petitioner's habeas claims.

The Supreme Court has indicated, however, that in certain limited circumstances the district court can stay a habeas action to permit a petitioner the opportunity to return to state court to properly exhaust his claims in state court. *See Rhines*, 544 U.S. at 277. The *Rhines* Court warned, however, that the issuance of a stay for this purpose "should be available only in limited circumstances" so as to not undermine the goals of the AEDPA. *Id.* Accordingly, such a stay should be entered only where: (1) the petitioner has demonstrated good cause for his failure to exhaust the claim(s) at issue; (2) the unexhausted claims are potentially meritorious; and (3) the petitioner has not engaged in intentionally dilatory litigation tactics. *Id.* at 278; *see also*, *Wiedbrauk v. LaVigne*, 174 Fed. Appx. 993, 999 (6th Cir., May 17, 2006).

Petitioner has failed to demonstrate entitlement to a stay in this matter and has instead opted to dismiss the unexhausted claims in his petition. (ECF No. 23-24). Accordingly, the Court will adjudicate on the merits habeas claims V, VI, VII, VIII, X, XI, XII, as well as Petitioner's

claim, asserted in habeas claim IX, that his attorney rendered ineffective assistance by stipulating to the admission of a composite sketch of Petitioner.[2]

## II.        Habitual Offender Notification  (Habeas Claim VI)

When Petitioner committed the crimes at issue in this matter, he had been convicted of a previous felony.  (Sentencing Transcript, May 13, 2010 at PageID.649).  Under Michigan law, Petitioner's prior felony conviction subjected him to an enhanced sentence not more than one and one-half times the maximum sentence for the crimes in question.  *See* Mich. Comp. Laws § 769.10. Petitioner asserts that he is entitled to relief because he did not learn until sentencing that the prosecutor would be seeking an enhanced sentence in this matter based upon his prior felony conviction.

Respondent argues that this claim raises solely state law issues which are not reviewable in a federal habeas proceeding.  The Court is not persuaded.  *See, e.g., Wilson v. McGinnis*, 2004 WL 1534160 at *6 n.5 (S.D.N.Y., July 8, 2004) ("[d]ue process requires notice of sentence enhancements based on recidivism").  The record reveals, however, that notice was provided to Petitioner.  On March 19, 2009, two days after Petitioner's arrest, and more than one year before his trial, prosecutors filed notice with the court that it would seek a sentence enhancement.  (ECF No. 12-1 at PageID.72).

The Michigan Court of Appeals rejected this claim on the ground that "[t]he record indicates that the prosecutor filed the required notice of intent more than one year before

---

[2]   The Court notes that Petitioner's claims as articulated in his amended petition are largely unintelligible.  To the extent the Court cannot discern from Petitioner's pleadings in this Court the arguments he is presently asserting, the Court has consulted Petitioner's state court filings, many of which were drafted by his then attorney, in an attempt to better discern the nature of Petitioner's arguments in this Court.

16

[Petitioner's] trial." *Preston*, 2012 WL 5853223 at *10.  In light of the relevant authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**III.**        **Jury Composition**  (Habeas Claim VII)

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  The United States Supreme Court has long held that this right includes the right to be tried by a jury drawn from a fair cross-section of the community.  *See Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)).  Petitioner alleges that his right to be tried by a jury drawn from a fair cross-section of the community was violated because the jury which adjudicated his guilt contained only one African-American member.

To establish a prima facie violation of the fair cross-section requirement, Petitioner must demonstrate: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.  *See Berghuis*, 559 U.S. at 327 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

It must be noted, however, that Petitioner must show not only that the distinctive

17

group in question was insufficiently represented on the venire from which his jury was selected, but that such was the case in other venires as well.  *See Duren*, 439 U.S. at 366 ("it was necessary for petitioner to show that the underrepresentation of women, *generally and on his venire*, was due to their systematic exclusion in the jury-selection process") (emphasis added); *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) ("defendants must show more than that their particular panel was unrepresentative"); *McGinnis v. Johnson*, 181 F.3d 686, 690 (5th Cir. 1999) ("one incidence of a jury venire being disproportionate is not evidence of a 'systematic' exclusion"); *Gardner v. Kapture*, 261 F.Supp.2d 793, 802 (E.D. Mich. 2003) ("a one-time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element").

Even if the Court assumes that African-Americans are a "distinctive group" in Oakland County, Petitioner cannot satisfy the second or third prong of the analysis.  Regarding the fair and reasonable representation prong, Petitioner discusses at length the legal standard but offers neither evidence nor argument that the standard was violated in this instance.  (ECF No. 9; ECF No. 12-16 at PageID.731-35).  As for the systematic exclusion prong, Petitioner simply fails to advance any argument or evidence whatsoever, stating simply (in his state court brief) that "this prong will be met on remand."  (ECF No. 9; ECF No. 12-16 at PageID.735).

The Michigan Court of Appeals rejected this claim stating:

> As an African-American, defendant is a member of a 'distinct group' for purposes of the fair cross-section requirement.  Defendant has failed, however, to set forth any basis for concluding that there was a systematic exclusion of African-Americans in Oakland County's jury-selection process, and there is no indication that African-Americans were underrepresented in his jury venire.  This Court will not search for a factual basis to sustain or reject a defendant's position.

*Preston*, 2012 WL 5853223 at *6.

In light of the relevant authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**IV.        In-Court Identification of Petitioner**  (Habeas Claim VIII)

Petitioner argues that his right to a fair trial was violated because he was convicted on the basis of evidence derived from improperly suggestive in-court identification procedures. Specifically, Petitioner challenges Deborah Spehar's in-court identification of Petitioner as her assailant.

The due process clause protects criminal defendants from being convicted on the basis of "evidence derived from a suggestive identification procedure" that was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) and citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)).  It is the likelihood of misidentification that violates a criminal defendant's due process rights.  *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (citing *Biggers*, 409 U.S. at 198).  Accordingly, absent "a very substantial likelihood of irreparable misidentification," identification evidence "is for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

To determine whether an identification procedure violated a criminal defendant's due process rights, courts employ a two-step analysis. *Ledbetter*, 35 F.3d at 1070-71; *Haliym*, 492 F.3d

at 704.   The court must first determine whether the identification procedure in question was unnecessarily suggestive.  *Ledbetter*, 35 F.3d at 1070-71; *Haliym*, 492 F.3d at 704.   Determining whether an identification procedure is unnecessarily suggestive "depends upon whether the witness's attention was directed to a suspect because of police conduct."  *Howard*, 405 F.3d at 470.

If the identification procedure is found to be unnecessarily suggestive, the court must determine "whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification."  *Id.* (quoting *Manson*, 432 U.S. at 107); *see also*, *Ledbetter*, 35 F.3d at 1071; *Haliym*, 492 F.3d at 704.   When considering whether a suggestive identification is nonetheless reliable, the Court must consider the following factors: (1) the witness' opportunity to view the suspect; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the time between the crime and the identification.  *Haliym*, 492 F.3d at 704 (citing *Manson*, 432 U.S. at 114 and *Neil*, 409 U.S. at 199-200).

A preliminary examination was conducted on February 24, 2009.  (ECF No. 12-2). After describing how her assailant entered her home and began assaulting her, Deborah Spehar was asked whether she would "be able to recognize" her assailant.  (Preliminary Examination, Feb. 24, 2009 at PageID.86).  Spehar responded, "yes" and then immediately identified Petitioner as her assailant.  (Preliminary Examination, Feb. 24, 2009 at PageID.87).  Spehar then described in detail her encounter with Petitioner, describing her ability to observe Petitioner throughout.  (Preliminary Examination, Feb. 24, 2009 at PageID.91-117).   Spehar also reported that after viewing a photograph of Petitioner, she was "80 percent confident" that Petitioner was her assailant, but after hearing Petitioner speak at a subsequent court proceeding she was 100 percent confident that

20

Petitioner was her attacker.   (Trial Transcript, April 23, 2010 at PageID.396-99).   Spehar also reiterated at Petitioner's trial the account of her attack including her ability to observe Petitioner throughout.

Petitioner argues that because he was wearing an orange prison jumpsuit during the preliminary examination, Spehar's identification testimony was improperly admitted.   Even if the Court assumes that Petitioner's presence in prison garb was unnecessarily suggestive, the totality of the circumstances compels the conclusion that there did not exist a substantial likelihood of irreparable misidentification.

Spehar had previously identified Petitioner from a lineup procedure that included photographs of fifty-four (54) individuals.   Spehar never identified anybody other than Petitioner as her assailant.   Spehar testified that the encounter with her assailant lasted for a significant length of time during which the two had significant interaction.   Spehar was able to observe her assailant and described his general height and weight the police immediately after her attack.   Finally, Spehar expressed a very high level of certainty in the accuracy of her identification.   The record does not suggest that there existed "a very substantial likelihood of irreparable misidentification," in which case the identification evidence was a matter for the jury to weigh.   The Michigan Court of Appeals rejected this claim on the following basis:

> To the extent that defendant's jail garb and his location at the defense table at the preliminary examination were unduly suggestive, the record clearly establishes an independent basis for the victim's in-court identification of defendant at trial.   At the time of the preliminary examination, the victim had already identified defendant from his photograph.   As previously indicated, the victim had an opportunity to observe defendant from three to four feet away as he stood in her foyer after breaking into her house.   From her observation, she was able to describe defendant's height, weight, clothing, and skin tone.   The victim had a second opportunity to

21

observe defendant for 45 to 60 seconds while in the foyer closet. Although defendant was wearing a hood, there was nothing covering his face. The victim got a "very good glance" of defendant's facial profile, including his hairline. The victim saw that defendant's eyebrows were rounded and that he had goatee-type whiskers, a mustache, and thinner sideburns. She identified defendant's photograph with 80 percent certainty two months after the incident and never identified anyone other than defendant as the perpetrator. The victim explained that her certainty increased to 100 percent at the preliminary examination, not because of defendant's appearance, but rather from hearing his voice. The victim had numerous opportunities to hear defendant's voice during the criminal episode. The victim testified that she was certain of her identification, and there was no doubt in her mind that defendant was the perpetrator. Although defendant asserts that the victim did not provide any special identifying characteristics, he has not identified any unusual characteristics about his appearance that the victim should have noticed. Because the record clearly establishes that there was an independent basis for the victim's in-court identification, the trial court did not clearly err by admitting her in-court identification of defendant at trial.

*Preston*, 2012 WL 5853223 at *3.

In light of the relevant authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**V.**        **Sufficiency of the Evidence** (Habeas Claim V)

Petitioner claims that he is entitled to relief because his convictions are not supported by constitutionally sufficient evidence. Petitioner concedes that Deborah Spehar was the victim of the crimes in question, but argues that the prosecution failed to introduce sufficient evidence that he was the perpetrator of these crimes.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

As discussed in the preceding section, the identification evidence provided by Deborah Spehar was properly admitted and sufficiently supported the jury's conclusion that Petitioner was the perpetrator of the crimes in question. The Michigan Court of Appeals rejected this claim, concluding:

> Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to conclude that defendant was the perpetrator beyond a reasonable doubt. Defendant's challenges to the weight and credibility of the victim's identification testimony were matters for the jury to decide and do not affect the sufficiency of the evidence. This Court will not interfere with the jury's role of determining issues of weight and credibility. Rather, we are required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. Thus, the evidence was sufficient to support defendant's convictions.

*Preston*, 2012 WL 5853223 at *2 (internal citations omitted).

In light of the relevant authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**VI.**     **Ineffective Assistance of Counsel**  (Habeas Claim IX)

As noted above, while Petitioner has, at various stages, advanced several different claims of ineffective assistance of counsel, the only such claim which has been properly exhausted is his claim that his trial attorney rendered ineffective assistance by stipulating to the admission of a composite sketch of Petitioner.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688

24

(1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689).  Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.  Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  In the context of a sentencing proceeding, Petitioner must demonstrate that there exists a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence. *See, e.g., Stumpf v. Robinson*, 722 F.3d 739, 753-54 (6th Cir. 2013) (to prevail on a claim that counsel rendered ineffective assistance at sentencing, petitioner must demonstrate that there exists a reasonable probability that absent counsel's errors he would have received a different sentence).

The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690).  This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance

of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

Detective Schehr testified that two different police sketch artists met separately with Deborah Spehar and created composite drawings of Spehar's attacker. (Trial Transcript, April 23, 2010 at PageID.527-33). Petitioner's counsel sought to admit one of these drawings into evidence on the ground that it's depiction of Spehar's attacker differed from Spehar's trial testimony. (Trial Transcript, April 23, 2010 at PageID.527-35). The prosecutor objected on foundation and hearsay grounds. (Trial Transcript, April 23, 2010 at PageID.527-36). The prosecutor agreed, however, to waive his objection to the one composite sketch if Petitioner's counsel would agree to the admission of the second composite sketch. (Trial Transcript, April 23, 2010 at PageID.534-36). Petitioner's counsel agreed and both sketches were admitted into evidence.

Petitioner argues that his attorney's agreement to admit the second composite sketch constituted ineffective assistance of counsel. Petitioner has failed to articulate how his attorney's actions constituted deficient performance. Rather, counsel's decision appears to be the type of

strategic decision which courts have consistently held are "virtually unchallengeable." *See United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690-91); *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006) (when "assessing deficient performance, reviewing courts must take care to avoid 'second guessing' strategic decisions that failed to bear fruit"). Petitioner has likewise posited neither argument nor theory that the sketch in question was inadmissible and, therefore, would not have been admitted absent his attorney's stipulation.

Moreover, even if the Court assumes that counsel's conduct was deficient, Petitioner has failed to describe how he was prejudiced by the admission of sketch in question. The evidence against Petitioner was quite substantial. Deborah Spehar identified Petitioner as her assailant and Petitioner was subsequently discovered to be in possession of Spehar's stolen vehicle. The Court cannot discern how the introduction of a composite sketch of Spehar's assailant constituted the difference between acquittal and conviction in this matter. The Michigan Court of Appeals rejected this claim, observing:

> In seeking the admission of one composite sketch ("sketch A"), defense counsel argued that it was relevant because it was "very different" from the victim's description of the perpetrator and her testimony at trial. The prosecutor objected to the admission of sketch A, but eventually indicated that if sketch A was admitted, then the other sketch ("sketch B") should also be admitted, and defense counsel agreed. During trial, defense counsel used sketch A to argue that the victim's identification of defendant was inconsistent and not credible. Defendant has not overcome the strong presumption that counsel stipulated to the admission of sketch B to secure the admission of sketch A as a matter of trial strategy. We will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." Further, the prosecutor announced his intention to seek the admission of sketch B, and defendant has not identified a basis on which sketch B could have been excluded from evidence.

27

*Preston*, 2012 WL 5853223 at *9 (internal citations omitted).

In light of the relevant authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**VII.        Refusal to Grant Change of Venue**  (Habeas Claim X)

Petitioner next argues that he is entitled to relief because of "inflammatory pretrial publicity."  According to Petitioner, "the media had a very large impact on this case."  Specifically, Petitioner asserts that news of his trial was broadcast throughout Oakland County on "Metropolitan Detroit's major television stations."  Petitioner further asserts that "the printed media covered the events. . .extensively, prejudicing the jury pool beyond cure."  Petitioner did not request a change of venue, however, but instead faults the trial court for failing to change the venue of his trial "on its own motion."

Every criminal defendant is entitled to fair trial before an impartial jury and where pretrial publicity jeopardizes this right, the trial court should grant the defendant a change in venue. *See Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012).  Prejudice resulting from pretrial publicity is characterized as presumptive or actual.  Pretrial publicity is presumptively prejudicial "where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community."  Such circumstances "rarely" occur.  *Id.*

Where pretrial publicity is not presumptively prejudicial, the trial court must

determine whether such publicity nonetheless results in actual prejudice. The "primary tool" for uncovering actual prejudice is voir dire of prospective jurors. *Id.* at 593-94. Negative media coverage does not by itself result in actual prejudice. *Id.* at 594. Moreover, the mere fact that a potential juror possessed a preconceived notion as to the defendant's guilt or innocence is by itself insufficient to establish actual prejudice. Rather, the relevant question is "did the juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Id.*

While Petitioner advances the conclusion that the jury pool was prejudiced "beyond cure" by pretrial publicity, he has provided no support for this conclusion. Petitioner has failed to describe in any way the offending publicity or provide evidence substantiating any such description. Likewise, Petitioner has presented no evidence that there existed in this matter "an inflammatory, circus-like atmosphere." Thus, Petitioner cannot establish that his trial was infected by presumptively prejudicial news coverage. As for whether any pretrial publicity resulted in actual prejudice, Petitioner's claim likewise fails. Again, Petitioner has failed to establish the existence of any negative or potentially prejudicial pretrial publicity. Furthermore, during voir dire the trial judge asked all the potential jurors whether they were familiar with the "alleged incidents" giving rise to the charges against Petitioner. (Trial Transcript, April 22, 2010 at PageID.242-43). None of the potential jurors responded in the affirmative. (Trial Transcript, April 22, 2010 at PageID.243). Finally, the jurors were all instructed to, among other things, "only consider the evidence that was admitted in the case" and to ignore any media reports regarding the trial. (Trial Transcript, April 22, 2010 at PageID.305, 314-15). Jurors are presumed to follow their instructions and Petitioner offers no evidence suggesting such was not the case here.

In sum, the record contains no evidence from which it can reasonably be concluded that the jurors in this matter were unable or failed to fairly and impartially examine the evidence in this matter.  Thus, the Court finds no basis for Petitioner's assertion that his right to a fair trial was denied by the trial court's failure to *sua sponte* order a change in venue.  The Michigan Court of Appeals rejected this particular claim, observing that "there is no record evidence of any inflammatory pretrial media coverage and none of the jurors were aware of the case." *Preston*, 2012 WL 5853223 at *5-6.  In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**VIII.**       **Prosecutorial Misconduct**  (Habeas Claim XI)

Petitioner argues that he is entitled to relief on the ground that the prosecutor engaged in misconduct.  Specifically, Petitioner has identified the following comments or incidents: (1) the prosecutor commented on Petitioner's decision not to testify; (2) the prosecutor characterized Petitioner as the unluckiest man on earth; (3) the prosecutor elicited testimony from police officers; and (4) the prosecutor coerced testimony from witnesses.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor." *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  The issue is whether the prosecutor's conduct "so infected the trial with unfairness as

30

to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also*, *Givens v. Yukins*, 2000 WL 1828484 at *6 (6th Cir., Dec. 5, 2000) ("[t]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused") (quoting *Phillips*, 455 U.S. at 219).   Thus, even if the challenged comments were improper, habeas relief is available only where the comments were "so flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897.

When assessing whether alleged prosecutorial misconduct warrants relief, the Court undertakes a two part analysis.  The Court must first determine whether "the prosecutor's conduct and remarks were improper." *Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007).  If such is the case, the Court must then determine "whether the impropriety was flagrant and thus warrants reversal." *Id.* at 759.  When assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court considers the following factors: (1) the likelihood that the comments mislead the jury or prejudiced the accused; (2) whether the comments were extensive or isolated; (3) whether the comments were deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused was substantial. *Id.*

### 1.      Petitioner's Decision not to Testify

This argument was not asserted in state court by Petitioner's counsel, but was instead asserted by Petitioner in a supplemental pleading.  The entirety of Petitioner's argument is that "the prosecutor made multiple remarks to the jury about the defendants not taking the stand.  This created a bad picture in the jury decision making."  Petitioner has failed to identify where in the record such

comments were allegedly made, however. The Court has reviewed the record, particularly the prosecutor's closing argument, and located no instance in which the prosecutor commented on Petitioner's decision not to testify. The Michigan Court of Appeals reached the same conclusion, rejecting this argument on the ground that such was not supported by the record. *Preston*, 2012 WL 5853223 at *10. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

### 2. Characterization of Petitioner as Unluckiest Man on Earth

During his closing argument, the prosecutor made the following comments which Petitioner argues deprived him of the right to a fair trial:

> What about the incident in Northville Township, ladies and gentlemen? What about that that (sic) identifies the defendant as being the perpetrator of this crime? Number one, of the one person out of the 54, lo and behold the only person she selects is the person who was driving her car from Northville. Is that a coincidence? Is this a coincidence? You know, these are just amazing coincidences or the defendant, Mr. Harvey Lee Preston is one of the most unluckiest men on the face of the earth. Just one out of 54 is amazing, but how about selecting the only person who had been arrested driving her car which had been stolen from his house? That's not a coincidence.

(Trial Transcript, April 26, 2010, at PageID.587).

Petitioner objects to these comments because they suggested to the jury that he was guilty. A prosecutor is entitled, however, to "argue reasonable inferences from the evidence."

32

*Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 852 (6th Cir. 2017).   Likewise, a prosecutor is permitted to argue that the evidence establishes a defendant's guilt.   *See, e.g., Planes v. Berghuis*, 2010 WL 3937311 at *12 (E.D. Mich., June 30, 2010).   The comments in question constitute nothing more than a reasonable argument, based on the evidence, to counter Petitioner's argument that Deborah Spehar misidentified Petitioner and that Petitioner fled from Officer Cox merely because he was driving a stolen vehicle.

The Michigan Court of Appeals rejected this argument.   *Preston*, 2012 WL 5853223 at *10.   In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

### 3.      Testimony Elicited from Police Officers

In his petition, Preston argues that "the prosecutor also elicited testimony from police officers."   This is the entirety of Petitioner's argument.   It is, not surprisingly, difficult to discern from this single phrase the argument Petitioner is attempting to advance.   The Court has interpreted this language as asserting the claim Petitioner advanced in state court that the prosecutor elicited from police officers testimony that violated Petitioner's Fifth Amendment rights.

As noted above, Bernard Sanders, Elton Martin, Irving Phillipson all testified that Petitioner refused to participate in physical line-ups.   Larry Schehr also testified that he asked Petitioner to volunteer a hair sample for forensic testing purposes, but that Plaintiff refused.   (Trial

Transcript, April 23, 2010 at PageID.568). Petitioner does not dispute the accuracy of this testimony, but instead argues that presentation of this evidence was improper because it violated the rule prohibiting use of a defendant's post-Miranda silence as evidence of guilt. *See, e.g., Doyle v. Ohio*, 426 U.S. 610, 619 (1976) (the evidentiary use of a criminal defendant's post-*Miranda* silence violates due process).

A review of the record, however, reveals that none of the officers testified that Petitioner was silent or otherwise declined to communicate. Sanders and Martin both testified that they spoke to Petitioner about participating in physical lineups, but that Petitioner communicated his refusal to do so. (Trial Transcript, April 23, 2010 at PageID.551-52, 555-56). Schehr likewise testified that Petitioner verbally refused his request for a hair sample. (Trial Transcript, April 23, 2010 at PageID.551-52, 567-68). This argument is, therefore, without merit. The Michigan Court of Appeals rejected this claim. *Preston*, 2012 WL 5853223 at *8. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

4.     Coerced Testimony

The entirety of Petitioner's argument, as articulated in his petition, is that "the prosecutor also coerced testimony of witnesses." Petitioner does not cite to any portion of the record or to any previous filing, pleading, or argument. Moreover, the Court cannot correlate this claim to any claim Petitioner presented in state court. Accordingly, the Court concludes that Petitioner

has waived this particular claim through insufficient development. *See, e.g., McGarvey v. Borgan*, 2005 WL 1076054 at *2 (E.D. Wisc., Apr. 27, 2005) (habeas petitioner found to have waived a claim which he "fail[ed] to develop").

## IX.        **Judicial Misconduct**  (Habeas Claim XII)

Petitioner argues that he is entitled to relief on the ground that the trial judge engaged in misconduct.  Specifically, Petitioner alleges the trial judge erred in the following respects: (1) the trial judge asked Petitioner at sentencing if he understood the meaning of the word "habitual"; (2) the trial judge imposed on Petitioner a sentence in excess of the sentencing guidelines; and (3) the trial judge improperly admitted into evidence a "docket" from another case.  These claims were not asserted in state court by Petitioner's counsel, but were instead asserted by Petitioner in his supplemental pleading.  For the reasons discussed immediately below, these claims are all without merit.

### A.        Definition of "Habitual"

Petitioner alleges that the trial judge asked him at sentencing if he understood the meaning of the word "habitual."  Petitioner has failed to identify where in the record this exchange occurred.  A review of the transcript of the sentencing proceedings in this matter reveal no such exchange.  The Michigan Court of Appeals rejected this claim on the ground that "[t]here is no indication in the record that the trial court inquired about the defendant's knowledge of the term 'habitual.'"  *Preston*, 2012 WL 5853223 at *11.  This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision

was not based on an unreasonable determination of the facts in light of the evidence presented.

B. Excessive Sentence

Petitioner claims that he is entitled to relief because the trial judge imposed a sentence in excess of the sentencing guidelines. First, whether Petitioner was sentenced in accordance with Michigan law is not cognizeable on federal habeas review. 28 U.S.C. § 2254(a). Second, a review of Petitioner's sentencing does not support Petitioner's assertion that he was sentenced to a prison term lengthier than the Michigan sentencing guidelines recommended. The Michigan Court of Appeals rejected this claim on the ground that "[t]he record clearly shows that the trial court sentenced defendant within the appropriate sentencing guidelines range." *Preston*, 2012 WL 5853223 at *11. This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.

C. Introduction of Other Docket

The nature of this particular claim is difficult to discern. In his petition, Preston asserts that the trial judge "was unfair by allowing docket 09-2133-01 district Wayne County be the entire case for docket 09-225701-FC Oakland County." This is the entirety of Petitioner's argument. Perhaps Petitioner is asserting that evidence from another matter was improperly introduced at his trial. If such is the case, Petitioner has failed to identify where in the record support for such an argument can be found. The Court has reviewed the record and discerns no such evidence. In support of his argument, Petitioner has failed to cite to any portion of the record or to any previous

filing, pleading, or argument.  Accordingly, the Court concludes that Petitioner has waived this particular claim through insufficient development.  *See, e.g., McGarvey*, 2005 WL 1076054 at *2.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Preston's petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  May 31, 2017                                     /s/ Ellen S. Carmody
                                                       ELLEN S. CARMODY
                                                       United States Magistrate Judge